UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| WELLS FARGO BANK, N.A., as Trustee for the Holders of Bank of America Commercial Mortgage Inc. Commercial Mortgage Pass-Through Certificates, Series 2004-4, by and through its special servicer, ORIX CAPITAL MARKETS, LLC, | : : : : : : : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CA 10-61 S |
| | : | |
| BERNARD WASSERMAN, DAVID WASSERMAN, and RICHARD WASSERMAN, | : : : | |
| Defendants. | : | |

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

Before the Court are two motions filed by Plaintiff Wells Fargo Bank, N.A., as Trustee for the Holders of Bank of America Commercial Mortgage Inc. Commercial Mortgage Pass-Through Certificates, Series 2004-4, by and through its special servicer, ORIX Capital Markets, LLC ("the Trustee" or "Plaintiff"):

1. Motion for Contempt, for Default Judgment and Dismissal for Failure to Comply with Court Order and for Attorneys' Fees (Docket ("Dkt.") #33) ("First Motion for Contempt"); and

2. Motion for Contempt and Entry of Default Judgment for Failure to Comply with Court Order Regarding Order to Compel Supplemental Responses to Second Request for Production and for Attorneys' Fees (Dkt. #35) ("Second Motion for Contempt") (collectively, the "Motions").

The Motions have been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). After reviewing the filings, listening to oral argument, and performing independent research, I recommend that the Motions be treated as motions for sanctions pursuant to Fed. R. Civ. P. 37(b)(2)(C) and that they be granted for the reasons stated herein. I further recommend that the following sanctions be imposed.

1. For the violation of Defendants' discovery obligations addressed by the First Motion for Contempt, I recommend that Defendants' Counterclaim be dismissed.

2. For the violation addressed by the Second Motion for Contempt, I recommend that Defendants be precluded from introducing or referring to any evidence, documents, or communications with or from Koffler Real Estate, LLC, or any affiliate thereof, regarding the purchase of 200 Frenchtown Road, North Kingstown, Rhode Island, in support of their Fifth and Eleventh Affirmative Defenses, see Section IV. C. 2. infra at 28-29.

3. For both violations, I recommend that the Trustee be awarded its attorneys' fees incurred in bringing the Motions.

## I. Background

This is a breach of contract action. Complaint (Dkt. #1) ¶¶ 29-34. The Trustee contends that Defendants Bernard Wasserman

2

("Bernard"), David Wasserman ("David"), and Richard Wasserman ("Richard") (collectively the "Wassermans," "Borrowers," or "Defendants") are personally liable for a $21.5 million dollar loan made to their company, WREC Precision Park LLC ("WREC"). Id. ¶¶ 7, 30. The loan was secured by a mortgage on realty located at 200 Frenchtown Road, North Kingstown, Rhode Island, known as Precision Park (the "Property"). Id. (Introduction). WREC defaulted on the loan. Id. ¶ 11. The Trustee alleges that after WREC's insolvency WREC made a series of fraudulent transfers from March through December 2008 totaling more than $600,000 to insiders and related entities, including the Borrower Principals, Bernard's wife, Ina Wasserman, and closely held Wasserman companies. Id. (Introduction). These transfers, *inter alia*, allegedly rendered Defendants personally liable for all amounts due on the promissory note, mortgage, and loan agreement. Id. The Trustee additionally alleges that the Wassermans are personally liable for damages that it suffered as a result of the commission of waste at the Property. Id.

Defendants have denied all liability and have claimed that the majority of transfers to themselves were loan repayments. See Answer of Defendants, Counterclaim, and Third-Party Complaint (Dkt. #6) ("Answer") at 12-22. Defendants also claim that the loans related to tenant improvements and were approved by the Trustee or the Trustee's agents. Id. at 15-17. In their Counterclaim,

Defendants assert that the Trustee, through its predecessors, acted with negligence and bad faith in connection with the original $21.5 million loan between the Trustee and WREC. Id. at 12. Defendants contend that the instant lawsuit is brought as a pretext and in bad faith for the sole purpose of coercing the Wassermans to make a voluntary transfer of an interest in a parcel of property owned by a Wasserman related entity that is located adjacent to the Property now owned by the Trustee. Id. Defendants additionally allege that they have been severely damaged as a result of collusion between the Trustee and Third-Party Defendant Gerald E. Lavallee. Id. at 16-17.

## II.  Facts and Travel

### A.  Initial Proceedings

The Trustee filed its Complaint on February 17, 2010, and Defendants filed their answer, counterclaim, and third-party complaint on May 17, 2010. See Dkt. On October 27, 2010, the Trustee served its initial Interrogatories and Request for Production on Defendants. See Memorandum of Law in Support of Motion for Contempt, for Default Judgment and Dismissal for Failure to Comply with Court Order and for Attorneys' Fees (Dkt. #34) ("Trustee's Mem. Re First Motion for Contempt") at 3. The Trustee served its Second Request for Production on December 8, 2010. See Memorandum of Law in Support of Motion for Contempt and Entry of Default Judgment for Failure to Comply with Court Order Regarding

Order to Compel Supplemental Responses to Second Request for Production and for Attorneys' Fees ("Trustee's Mem. Re Second Motion for Contempt"), Exhibit ("Ex.") A at 5.

**B.  The Instant Motions**

The First Motion for Contempt and the Second Motion for Contempt were both filed on March 7, 2011. <u>See</u> Dkt. Defendants filed their objections to the Motions on March 20, 2011. <u>See</u> Defendants' Objection to Motion for Contempt, Default Judgment and Dismissal for Failure to Comply with Court Order (Dkt. #37) ("Objection to First Motion for Contempt"); Defendants' Objection to Motion for Contempt, Default Judgment and Dismissal for Failure to Comply with Court Order Regarding Order to Compel Supplemental Responses to Second Request for Production and for Attorneys' Fees (Dkt. #38) ("Objection to Second Motion for Contempt").  The Trustee responded with a reply memorandum on March 29, 2011, and a supplement to that reply on April 4, 2011. <u>See</u> Reply Brief in Support of First Motion for Contempt, for Default Judgment and Dismissal for Failure to Comply with Court Order and for Attorneys' Fees (Dkt. #40) ("Trustee's Reply Mem."); Supplemental Reply Brief in Support of Motion for Contempt, for Default Judgment and Dismissal for Failure to Comply with Court Order and for Attorneys' Fees (Dkt. #42) ("Trustee's Supp. Reply Mem.").  A hearing on the Motions was held on April 15, 2011.  Thereafter, the Court took the matters under advisement.

## III.  Law

Fed. R. Civ. P. 37(b)(2) states in relevant part: "If a party ... fails to obey an order to provide ... discovery ... the court where the action is pending may issue further just orders."  Fed. R. Civ. P. 37(b)(2).  Among the sanctions authorized is an "order striking pleadings in whole or in part ... or dismissing the action ...." Fed. R. Civ. P. 37(b)(2)(A)(iii, v); <u>see also</u> <u>Angulo-Alvarez v. Aponte de la Torre</u>, 170 F.3d 246, 251 (1st Cir. 1999)("Rule 37(b)(2)(C) specifically provides for dismissal if a party fails to comply with an order to provide discovery ...."); <u>United States v. Palmer</u>, 956 F.2d 3, 6-7 (1st Cir. 1992)("[I]n the ordinary case, where sanctions for noncompliance with discovery orders are imposed on a plaintiff, the standard judgment is dismissal of the complaint, with or without prejudice, while a judgment of default typically is used for a noncomplying defendant."); <u>Luis C. Forteza e Hijos, Inc. v. Mills</u>, 534 F.2d 415, 419 (1st Cir. 1976)("[I]n an appropriate case a district court has power ... to nonsuit a plaintiff[] for failure to comply with the court's orders or rules of procedure.").  However, "[d]ismissal with prejudice 'is a harsh sanction' which runs counter to our 'strong policy favoring the disposition of cases on the merits.'"  <u>Marx v. Kelly, Hart & Hallman, P.C.</u>, 929 F.2d 8, 10 (1st Cir. 1991)(quoting <u>Figueroa Ruiz v. Alegria</u>, 896 F.2d 645, 647 (1st Cir. 1990))(alteration in original); <u>cf.</u> <u>Coyante v. Puerto Rico Ports Auth.</u>, 105 F.3d 17, 23

(1st Cir. 1997)("discovery abuse, while sanctionable, does not require as a matter of law imposition of [the] most severe sanctions available")(citing Anderson v. Beatrice Foods Co., 900 F.2d 388, 396 (1st Cir. 1990)); Affanato v. Merrill Bros., 547 F.2d 138, 141 (1st Cir. 1977)("isolated oversights should not be penalized by a default judgment").

Nevertheless, "[t]he law is well established in this circuit that where a noncompliant litigant has manifested a disregard for orders of the court and been suitably forewarned of the consequences of continued intransigence, a trial judge need not first exhaust milder sanctions before resorting to dismissal." Angulo-Alvarez v. Aponte de la Torre, 170 F.3d at 252; see also Serra-Lugo v. Consortium-Las Marias, 271 F.3d 6 (1st Cir. 2001)(holding that district court acted "well within its discretion in dismissing the case after repeated violations of its orders and after having warned plaintiff of the consequences of non-compliance"); Marx v. Kelly, Hart & Hallman, P.C., 929 F.2d 8, 10-11 (1st Cir. 1991)(finding "plaintiff's conduct evidenced a deliberate pattern of delay and disregard for court procedures that was sufficiently egregious to incur the sanction of dismissal"). "[A] party's disregard of a court order is a paradigmatic example of extreme misconduct." Torres-Vargas v. Pereira, 431 F.3d 389, 393 (1st Cir. 2005); accord Young v. Gordon, 330 F.3d 76, 81 (1st Cir. 2003)("[D]isobedience of court orders is inimical to the

orderly administration of justice and, in and of itself, can constitute extreme misconduct.")(citing Tower Ventures, Inc. v. City of Westfield, 296 F.3d 43, 46 (1st Cir. 2002); Cosme Nieves v. Deshler, 826 F.2d 1, 2 (1st Cir. 1987)).  Thus, "a party flouts a court order at his peril." Torres-Vargas v. Pereira, 431 F.3d at 393; accord Young v. Gordon, 330 F.3d at 82 ("it is axiomatic that 'a litigant who ignores a case-management deadline does so at his peril.'")(quoting Rosario-Diaz v. Gonzalez, 140 F.3d 312, 315 (1st Cir. 1998)).

When noncompliance with an order occurs, "the ordering court should consider the totality of events and then choose from the broad universe of available sanctions in an effort to fit the punishment to the severity and circumstances of the violation." Young v. Gordon, 330 F.3d at 81 (citing Tower Ventures, Inc. v. City of Westfield, 296 F.3d at 46).  The appropriateness of an available sanction depends upon the facts of the particular case. Torres-Vargas v. Pereira, 431 F.3d at 392.

## IV.  Discussion

### A.  First Motion for Contempt

#### 1.  Interrogatory 19 and Request for Production 64

Interrogatory 19 asked each Defendant to:

Itemize all your damages in this matter, including all discrete amounts claimed as damages, the factual basis on which you rely for your contention that Plaintiff allegedly caused these damages, and all computations that you made to determine the alleged amount of damages.

Trustee's Mem. Re First Motion for Contempt at 3-4. Defendants' initial answers identically stated: "The damages in this matter are the result of the action taken by Plaintiff to pursue personal liability against me." Id. at 4. The Court agrees with the Trustee that this response by Defendants was "patently deficient." Id. at 3.

On January 13, 2011, the Trustee filed four motions to compel further responses to discovery:

1. Motion to Compel Defendant David Wasserman's Further Responses to First Set of Interrogatories from Wells Fargo Bank, N.A. and to Strike Objections (Dkt. #22) ("Motion to Compel David");

2. Motion to Compel Defendant Bernard Wasserman's Further Responses to First Set of Interrogatories from Wells Fargo Bank, N.A. and to Strike Objections (Dkt. #23) ("Motion to Compel Bernard");

3. Motion to Compel Defendant Richard Wasserman's Further Responses to First Set of Interrogatories from Wells Fargo Bank, N.A. and to Strike Objections (Dkt. #24) ("Motion to Compel Richard"); and

4. Motion to Compel Defendants' Response to First Request for Production of Documents from Wells Fargo Bank, N.A. and to Strike Objections (Dkt. #25) ("Motion to Compel Production") (collectively the "Four Motions to Compel").

No objections were filed to the Four Motions to Compel, and they were granted by a text order entered on February 4, 2011 (the "Order of 2/4/11"). <u>See</u> Dkt. Defendants were required to file their supplemental responses within twenty-one days. <u>Id.</u>

### a. Trustee's Argument

The Trustee's Motion to Compel for each Defendant with respect to Interrogatory 19 stated: "Defendant's answer is completely non-responsive, in that it simply fails to provide the requested information. Defendant should be ordered to supplement his answer and provide this information." Trustee's Mem. Re First Motion for Contempt at 4 (citing Dkt. #22, 23, 24). After the Court granted these motions to compel, Defendants supplemented their answers as follows:

> Bernard Wasserman: I am still investigating the conduct of the bank, and I will supplement this answer accordingly. I was damaged by the amount of my personal funding to WREC Precision Park in 2008 which would not have been made absent inducement by the bank servicers. In addition, I was damaged from the loss of the WREC Precision Park as a sustainable project which loss was caused in part by the bank's unresponsiveness, its receivership filing, and general overall mismanagement of the subject loan.

<u>Id.</u> (quoting Ex. A (Defendant Bernard Wasserman's Further Responses to the First Set of Interrogatories from Wells Fargo Bank, N.A. ("Bernard's Further Responses") at 13).

> David Wasserman: I have not evaluated the extent of my damages a this time, and will supplement this response appropriately when the information is available; however, I was damaged to the extent of the personal funding I provided in 2008 to WREC Precision Park, which absent

10

inducement by the bank, I would not have made. I also
was damaged by the overall unresponsiveness and
mismanagement of the bank which caused, at least in part,
a loss of my investment in WREC.

Id. (quoting Ex. B (Defendant David Wasserman's Further Responses

to the First Set of Interrogatories from Wells Fargo Bank, N.A.

("David's Further Responses") at 10).

Richard Wasserman: I have nothing further at this time
but shall supplement this response in a timely manner
when I have so determined the nature and extent of my
damages. I was damaged by the amount of my personal
funding to WREC Precision Park in 2008 which would not
have been made absent inducement by the bank servicers.
In addition, I was damaged from the loss of the WREC
Precision Park as a sustainable project which loss was
caused in part by the bank's unreasonable conduct.

Id. (quoting Ex. C (Defendant Richard Wasserman's Further Responses

to the First Set of Interrogatories from Wells Fargo Bank, N.A.

("Richard's Further Responses") at 9).

The Trustee validly complains that these answers are patently

non-responsive to Interrogatory 19. Trustee's Mem. Re First Motion

for Contempt at 5. They fail to itemize Defendants' damages,

include the computations related to that itemization, provide any

discrete amounts claimed as damages, and provide any factual

information regarding causation.

The Trustee also notes that Defendants' failures with respect

to Interrogatory 19 are exacerbated by their failure to produce or

properly identify documents evidencing their damages. Id. In

support of this contention the Trustee notes that Request for

Production 64 sought: "All documents evidencing Defendants' alleged

damages in this matter." Id. (quoting Ex. D (Defendants' Response to First Request for Production of Documents from Wells Fargo, N.A., Supplemented ("Defendants' Response to First Request for Production")) at 23). Defendants' initial response was: "The Defendants are unable to compute damages at this time." Id. (quoting Motion to Compel Defendants' Production (Dkt. #25) at 4). Unwilling to be put off by this non-response, the Trustee in its motion to compel argued:

> Defendants' response is evasive. Either Defendants have documentary evidence of their damages (which they pled in their counterclaim) or they do not. In either case, Defendants should be ordered to supplement this response to indicate the lack of documents showing damages or by producing those documents.

Id. (quoting Motion to Compel Defendants' Production at 4).

The Trustee accurately points out that Defendants' supplemental response to Request 64 refers obliquely to documents produced by the Keeper of Records of Wasserman Properties (over 1000 pages) without referring to specific documents, provides a conclusory recitation of Defendants' alleged damages without producing or identifying any documents that support these allegations, and then states that they do not have further documents:

> Certain documentary evidence of Defendants' damages is contained in the documents produced by Wasserman Properties pursuant to a Record Keeper deposition on November 18, 2010. These records show the amount of personal funding by the Wassermans to WREC Precision Park which would not have been made absent inducement by the bank servicers. In addition, the Wassermans have damages

from the loss of the WREC Precision Park project as a result of the Plaintiff's refusal to release escrowed replacement and leasing reserves; the Plaintiff's decision to place WREC into receivership, and because of the Plaintiff's overall lack of responsiveness, lack of timely response, and general overall mismanagement of the subject loan agreement, which damages have not yet been quantified. The Defendants have no further documents of damage loss at this time, and reserve the right to supplement this response in a manner compliant with Rule 34.

Trustee's Mem. Re First Motion for Contempt (quoting Ex. D at 24).

### b.    Defendants' Arguments

By way of background, Defendants state that they were investor members in WREC which was placed into receivership in December 2008. <u>See</u> Defendants' Memorandum of Law in Support of Objection to Motion for Contempt, Default Judgment and Dismissal for Failure to Comply ("Defendants' Mem. Re First Motion for Contempt") at 1. They claim that most of the documents relating to the company were turned over to the receiver at the commencement of the receivership. <u>Id.</u> at 1-2. Defendants assert that they "were not informed that the bank sought to hold them personally liable for a deficiency on the non-recourse note until the subject lawsuit was filed, several years after the commencement of the company's receivership and after the bank recovered all of WREC's assets at receivership sale."[1] <u>Id.</u> at 2.

---

[1] Given that WREC was placed in receivership in December 2008, <u>see</u> Defendants' Mem. Re First Motion for Contempt at 1, and that this action was filed in February 2010, Defendants' assertion that "the subject lawsuit was filed[] several years after the commencement of the company's receivership ...," <u>id.</u> at 2, is an exaggeration. Fourteen months is not

According to Defendants, the bank recovered all of the assets of WREC in 2010 by a credit bid of $10 million dollars for assets which the bank had determined were sufficient collateral for a loan of $23 million in 2003.  <u>Id.</u>  By the instant lawsuit, the bank is seeking to recover the deficiency balance between the amount owed by the company on the loan and the amount bid in at the sale.  <u>Id.</u> Defendants acknowledge the withdrawal of $600,000 from the company but argue that:

> What is critical here is that the Wassermans funded the company, WREC, with an aggregate of more than $600,000 all within several months  of the withdrawal because funds were needed to upgrade the property to the specifications of new tenants.  They ... personally lent this aggregate of $600,000 to the struggling company, WREC, in reliance on the bank's assurance that they could recover this funding as short term loans.  Absent this understanding with the bank, they would have turned the assets over to the bank (nonrecourse) and walked away from their investment.  The bank assured the Wassermans that if they made short term loans to the company for the tenant improvements required to re-let vacant spaces, that they could withdraw those funds from rents.

Defendants' Mem. Re First Motion for Contempt at 2.

Defendants argue generally that much of the information and document production which the Trustee is seeking is information that the Wassermans, as investors in the company, do not have or that was already turned over to the receiver.  <u>Id.</u> at 3. Defendants claim that they did not have any reason to anticipate that the bank would make personal claims against them.  <u>Id.</u>  During

---

"several years."

the time WREC was an operating entity it was run, according to Defendants, by numerous individuals, now former employees, who handled the finances and the property management, and its documents were maintained, for the most part, by former corporate attorneys. Defendants submit that they "have made every effort, and continue to make every effort, to disclose what information and documents they have been able to recover through reasonable inquiry in compliance with this Court's Order."  Id.

With specific reference to their responses to Interrogatory 19, Defendants argue "that they were damaged by the amount of their personal funding to WREC at a time when the project was less than 50% occupied, which amount was set forth in detail in response to Interrogatory no. 21."  Defendants' Mem. Re First Motion for Contempt at 4.  Defendants further represent that they have requested appraisal and internal memoranda information from the bank to be better able to quantify other losses caused by the bank's conduct in failing to be responsive to the real estate market and to their requests for the release of escrowed funds. Id.  Defendants pledge that as further discovery is obtained, they will supplement their responses.  Id.  Summarizing their position, Defendants assert that:

> The supplemented answer provided constitutes the Wasserman[s'] best compliance with this Court's Order to supplement, and certainly provided the bank with the items and basis for which the Wassermans claim damages: that they were coaxed to put personal funding into the project and that the bank was not responsive to

interested purchasers and therefore chilled the existing
        sale opportunities.

Defendants' Mem. Re First Motion for Contempt at 4.

> c.   **Finding Re Responses to Interrogatory 19 and Request for Production 64**

The Court notes initially that none of Defendants' responses to Interrogatory 19 referenced the response to Interrogatory 21. Thus, Defendants' suggestion that the response to Interrogatory 21 should be considered in evaluating their compliance with the Order of 2/4/11 relative to Interrogatory 19 is unpersuasive. Litigants have an obligation to provide the information requested by a given interrogatory in their response to that interrogatory. If they wish to incorporate information from their answer to another interrogatory, they must do so explicitly. The opposing party (and the Court) should not have to guess whether information contained in the responses to other interrogatories also applies to the interrogatory in question.

Even if the Court considers the response to Interrogatory 21, Defendants' theory of damages includes the damages associated with "the loss of the WREC Precision Park as a sustainable project which loss was caused in part by the bank's unresponsiveness, its receivership filing, and general overall mismanagement of the subject loan." Trustee's Mem. Re First Motion for Contemmpt at 4 (quoting Ex. A at 13); see also id., Ex. B at 10; id. Ex. C at 9. The Wassermans' supplemental answers to Interrogatories 19 and 21

do not provide information regarding their alleged damages related to the "loss" of the project.

With respect to Defendants' claim that they are waiting on "appraisal and internal memoranda information from the bank which have not been provided to be better able to quantify other losses ...," Defendants' Mem. Re First Motion for Contempt at 4, the Trustee notes that: (1) it complied with Defendants' discovery requests on December 20, 2010; (2) the Trustee's counsel communicated to Defendants' counsel that the only appraisal in the Trustee's possession, custody, and control was ordered by Trustee's counsel from a consulting expert as part of the state receivership process and, therefore, was privileged; and (3) no motions to compel further responses from the Trustee were pending as March 29, 2011, see Trustee's Reply Mem. at 2-3. The Court, thus, finds this claim by Defendants to be unsupported.

Also lacking in factual support is Defendants' claim that their supplemental answer constitutes their "best compliance with this Court's Order to supplement ...." Defendants' Mem. Re First Motion for Contempt at 4. Indeed, the excerpts from Defendants' depositions, which the Trustee has submitted in support of the First Motion for Contempt, effectively belie this claim. It is apparent that Defendants could have, but apparently have not, taken any steps on their own to determine the extent of their alleged pecuniary damages, including commissioning their own appraisal of

17

the Property (to the extent that the valuation of the Property may
be relevant to their claim of damages).  Bernard essentially
admitted this at his March 15, 2011, deposition:

> Q.    I want to read part of your answer to you also.
>       You say in here, "I am still investigating the
>       conduct of the bank and will supplement this
>       answer accordingly"; do you see that?
>
> A.    Yes, sir.
>
> Q.    As of today, what steps have you taken, if any,
>       to investigate the conduct of the bank relative
>       to Answer 19?
>
> A.    That has nothing to do with this, does it?  I
>       don't know.  Someone is doing it for me.
>
> Q.    Okay.  And who is that person who is investigat-
>       ing the conduct of the bank?
>
> A.    I don't know.
>
> Q.    Okay.  What has been done to investigate the
>       conduct of the bank to today?
>
> A.    I don't know.
>
> Q.    When do you plan on supplementing this answer,
>       sir?
>
> A.    When I have the answers.
>
> Q.    And when do you anticipate having the answers?
>
> A.    I can't give you a definitive date.

Trustee's Reply Mem., Ex. A (Deposition of Bernard) at 154-55.

The depositions of David and Richard similarly reflect that
neither had made any efforts to quantify that portion of their
alleged damages that relate to the "loss" of the Precision Park
project since the Court ordered them to do so on February 4, 2011.

The transcript of Richard's deposition contains the following exchange:

> Q. Understood. But the question is, sir, and please just stick with the question, what have you done, if anything, to determine the quantification of your damages related to the loss of the WREC Precision Park project?
>
> A. I just had the loans assembled that I made.
>
> Q. Would you agree with me that a component of this loss of project damages would be income flow going forward if the project were viable currently?
>
> A. Th[at] would be one aspect of it.[2]
>
> Q. What have you done to determine what those damages would have been?
>
> A. Personally, nothing.
>
> Q. Is anyone doing that on your behalf?
>
> A. I do not know.

Trustee's Supp. Reply Mem., Ex. A (Deposition of Richard) at 65.

David testified that he needed "to perform a full financial analysis ...," id., Ex. B (Deposition of David) at 98, regarding "market conditions ...," id. at 99, in order to provide a quantification of his damages, see id. at 98-99. However, as of March 30, 2011, the date of his deposition, he had done nothing to complete this analysis other than sketch some numbers on a scratch

---

[2] In the transcript this answer appears as: "There would be one aspect of it." Supplemental Reply Brief in Support of Motion for Contempt, for Default Judgment and Dismissal for Failure to Comply with Court Order and for Attorneys' Fees (Dkt. #42) ("Trustee's Supp. Reply Mem."), Ex. A (Deposition of Richard) at 65.

pad (which he then threw away) and engage in a preliminary

conversation with a broker in 2010:

> Q.    Okay.  Do you see reflected in your answer any
>       numerical quantification of your damages?
>
> A.    I do not.
>
> Q.    Why is that missing?
>
> A.    Because I haven't fully evaluated the extent of
>       my damages.
>
> Q.    When do you plan on be[ing] done with that
>       evaluation, sir?[3]
>
> A.    I don't have a date for you.
>
> Q.    Okay.  What have you done to date with respect
>       to that evaluation?
>
> A.    Sketch some numbers on legal pads.
>
> Q.    When did you do that?
>
> A.    I don't recall.
>
> Q.    Do you still have those legal pads?
>
> A.    No.
>
> Q.    You threw them away?
>
> A.    Yes.
>
> ....
>
> Q.    Okay.  When do you reasonably expect that you're
>       going to be in a position to supplement your
>       answer to Interrogatory 19 to provide that
>       information?

---

[3] In the transcript, this question appears as: "When do you plan on
be done with that evaluation, sir?"  Trustee's Supp. Reply Mem., Ex. B
(Deposition of David) at 97.

A.    I don't have an answer for that.  I don't know
      when.

Trustee's Supp. Reply Mem., Ex. B at 97-98, 102.  As the Court
finds David's deposition particularly revealing, a more extended
excerpt is attached as an Appendix to this Report &
Recommendation.[4]

Thus, despite the Order of 2/4/11, Defendants have failed to
provide basic information requested by Interrogatory 19 about their
damages.  Their contention that they have used their best efforts
to comply is undermined by their own deposition testimony.
Defendants alleged in their Counterclaim (which was filed on May
17, 2010) that they "have been damaged, in excess of the amounts
claimed by the Lender against the Wassermans," Answer at 21
(Counterclaim ¶ 21), an amount apparently in excess of $22 million
dollars, see Complaint ¶ 14 (alleging that as of February 12, 2010,
the deficiency on the note, mortgage, and loan agreement was
$16,866,420.98); id. ¶¶ 26-27 (alleging that Defendants are
personally liable for $5 million of damage due to waste); id. ¶ 28
(alleging approximately $350,000.00 in claims for unpaid taxes and
contractor bills).  Given that Defendants' responses to
Interrogatory 21 indicate that the combined total of their loans to
WREC is less than two million dollars, see Trustee's Mem. Re First
Motion for Contempt, Ex. A at 14 (stating amount loan by Bernard to

---

[4] The extended excerpt appears in the record as Ex. B to the
Trustee's Supp. Reply Mem.

be approximately $1,168,166); <u>id.</u>, Ex. B at 11 (stating amount loaned by David to be approximately $400,000); <u>id.</u>, Ex. C at 10(stating amount loaned by Richard to be $246,666), logically, more than 90% of Defendants' claimed damages must be attributable to loss of the Precision Park project. Yet, almost ten months after making this claim in their counterclaim and notwithstanding this Court's specific order of 2/4/11, Defendants state that they are unable to provide any specifics regarding how the lion's share of their damages is calculated. Such conduct cannot be condoned.

## 2. Interrogatory 21

Interrogatory 21 asked each Defendant to:

Itemize all loans that you have made to WREC, including the date, amount, purpose, and identify the source of funding and documents memorializing any such loan.

Trustee's Mem. Re First Motion for Contempt at 6. Substantively, Defendants' initial answers were limited to stating that documents provided by the records keeper of Wasserman Properties would reflect the loans that each Defendant had made. Motions to Compel (Dkt. #22, 23, 24). In its Motions to Compel, the Trustee noted that Defendants could not utilize Fed. R. Civ. P. 33(d) to answer this interrogatory "unless Defendant[s] specifically identified the documents that provide the answer to this request," <u>id.</u>

Defendants' supplemental responses again reference the documents produced by the records keeper although the verbiage is expanded and dates and amounts of the loans are listed. <u>See</u>

Trustee's Mem. Re First Motion for Contempt, Exs. A, B, C. However, the purposes of the loans are not stated. Id. Defendants suggest that the purpose of some loans may appear in the documents produced by the records keeper. Each Defendant indicates that he does not have sufficient recollection to identify the source of funding and that there are no other documents memorializing the loans. See id.

Critically absent from Defendants' supplemental response, however, is a specification of "the records ... in sufficient detail to enable the interrogating party to locate and identify them as readily as [Defendants] could ...." Fed. R. Civ. P. 33(d). Defendants have not disputed the Trustee's argument that the documents produced by the records keeper are voluminous and generally ambiguous. Thus, I find that Defendants have violated the Order of 2/4/11 by failing to identify with sufficient specificity which documents produced by the records keeper provide information as to the purpose of some loans.

### 3. Other Interrogatories (9, 17, and 18)

The First Motion for Contempt also identified Defendants' responses to Interrogatories 9, 17, and 18 as deficient and violative of the Order of 2/4/11. See Trustee's Mem. Re First Motion for Contempt at 6-8. However, at the April 15, 2011, hearing the Trustee's counsel indicated that after deposing the Wassermans he was satisfied that the Trustee had obtained the full

23

scope of the Wassermans' knowledge relative to the matters addressed by these interrogatories. Counsel confirmed this in a letter which the Court requested he submit. See Letter from Batastini to Martin, M.J., of 4/15/11. While the Trustee maintains that the Wassermans' deposition testimony does not excuse their failure to provide this information as required by the Court's orders, see id. at 1, the Court concludes that it is unnecessary to discuss these interrogatories and Defendants' responses to them. Thus, the Court makes no finding that Defendants' supplemental responses to Interrogatories 9, 17, and 18 fail to comply with the Court's orders.

**B. Second Motion for Contempt**

By way of background relative to this motion, the Trustee represents that there were informal discussions between the parties regarding Defendants' allegation that the Trustee impeded the sale of the collateral realty (the Property) for an amount greater than the Trustee's successful receivership sale bid.[5] See Trustee's Mem. Re Second Motion for Contempt at 2. During these informal discussions, Defendants identified one of these prospective sales as being a loan assumption by Koffler Real Estate, LLC. Id. As a result, the Trustee propounded a Second Request for Production to Defendants on December 8, 2010, seeking documents related to this

---

[5] These allegations are contained in Defendants' Fifth and Eleventh affirmative defenses. See Answer (Dkt. #6) at 7-8, 9.

transaction.  See id., Ex. A (Second Request for Production).

Specifically, the Second Request for Production sought:

> 65.  All documents related to communications with Koffler Real Estate, LLC ("Koffler") or any affiliate thereof, regarding the purchase of 200 Frenchtown Road, North Kingstown, Rhode Island[,] or the assumption of the loan that is the subject of this lawsuit as identified in Paragraphs 7-10 of the Complaint (the "Loan").
>
> 66.  All documents related to communications with Bank of America regarding the potential sale of 200 Frenchtown Road, North Kingstown, Rhode Island[,] by Koffler or the assumption of the Loan by Koffler.
>
> 67.  All documents showing any communication with or submission to Bank of America regarding the Assumption Requirement Letter dated September 9, 2008[,] previously produced in this matter as ORIX/WAS 000074-83.
>
> 68.  Any Notice of Termination received from Koffler related to the Purchase and Sale Agreement previously produced in this matter as ORIX/WAS 000016-85.

Id. at 4.

Defendants' initial response, dated January 5, 2011, to the Second Request for Production was: "With regard to Plaintiff's Second Request for Production, #65, #66, #67, and #68, the Defendants have no further documents."  Trustee's Mem. Re Second Motion for Contempt at 2 (quoting Ex. A to Motion to Compel Further Responses to Second Request for Production (Dkt. #26) ("Motion to Compel Further Responses")).  On January 19, 2011, the Trustee filed a motion to compel further responses, seeking to have Defendants "affirmatively identify with particularity which documents, if any, Defendants have produced that respond to each request contained in Plaintiff's Second Request for Production."

Motion to Compel Further Responses at 2.  This motion was granted by a text order entered on February 9, 2011, ("Order of 2/9/11") based upon Defendants' failure to object.  <u>See</u> Dkt.

Defendants provided their supplemental response on February 25, 2011, which read in full:

> With regard to Plaintiff's Second Request for Production of Documents, #65, #66, #67, and #68, to the best of their knowledge, the Defendants have no further documents other than those that have been produced voluntarily, in response to interrogatories and document requests from the Plaintiff, and by the Records Keeper of Wasserman Properties in response to a deposition of November 18, 2010.  Defendants reserve the right to supplement this response in accordance with discovery rules.

Trustee's Mem. Re Second Motion for Contempt, Ex. B (Defendants' Response to Second Request for Production of Documents from Wells Fargo Bank, N.A. ("Defendants' Supplemental Response to Second Request")).

The Trustee contends that the above supplemental response fails to supply the information which the Court ordered.  <u>See</u> Trustee's Mem. Re Second Motion for Contempt at 3.  In support of this contention, the Trustee notes that "Defendants were to 'affirmatively identify with particularity which documents' responded to the Second Request for Production."  <u>Id.</u> at 3-4 (quoting Motion to Compel Further Responses).  The response, in the Trustee's view, "reference[s] every document that [Defendants] have produced and Wasserman Properties produced, well over 1000 pages of documents in total.  That response is entirely unhelpful, and

appears to be part of a larger pattern by Defendants of shirking

their discovery obligations by providing oblique responses that

impart little if any substantive information." Id. at 4.

Defendants argue that:

> although the Wassermans are aware of the existence of
> documents related to an offer by Koffler Real Estate, LLC
> (Request #65); are aware of communications with Bank of
> America regarding the sale of 200 Frenchtown Road
> (Request #66); are aware of the existence of documents
> showing communication with Bank of America regarding the
> Assumption Requirement Letter (Request #67); and are
> aware of a Notice of Termination from Koffler (Request
> #68); the Wassermans do not have copies or access to
> copies of those documents. Some of the documents
> requested (#67, #68) are already in the possession of the
> bank as indicated by their ORIX production numbers. The
> other two documents were in the receivership file which
> the Plaintiff also has obtained. There is no
> demonstrable prejudice to the Plaintiff.

Defendants' Memorandum of Law in Support of Objection to Motion for

Contempt, Default Judgment and Dismissal for Failure to Comply with

Court Order Regarding Order to Compel Supplemental Responses to

Second Request for Production and for Attorneys' Fees ("Defendants'

Mem. Re Second Motion for Contempt") at 2.

Defendants' objection misses the point. Defendants maintain

that they have no additional documents in their possession, custody

or control, other than those that were formerly produced. However,

this still leaves the Trustee without any information regarding

which previously produced documents respond to its Second Request

for Production. Accordingly, I find that Defendants' response

violates the Court's Order of 2/9/11.

### C. Choice of Sanctions

#### 1. First Motion for Contempt

Defendants filed their Counterclaim on May 17, 2010, alleging that they "have been damaged, in excess of the amounts claimed by the Lender against the Wassermans," Answer at 21 (Counterclaim ¶ 60). As Plaintiff alleges damages in excess of $22 million, <u>see</u> Complaint ¶¶ 14, 26, 30, 31, 33, Defendants' claimed damages must necessarily exceed that amount. Yet, more than ten months after asserting a counterclaim for more than $22 million in damages, Defendants have done virtually nothing to quantify their damages. Despite this Court's Order of 2/4/11, they have failed to provide basic information about their damages sought by Interrogatory 19 and Request for Production 64. The violation is flagrant and unjustified. Defendants are not dependant upon the Trustee for calculation of their own damages. Their deposition testimony reveals a cavalier attitude towards their discovery obligations relative to quantifying their damages. <u>See</u> Section IV. A. 1. b. <u>supra</u> at 17-20; <u>see also</u> Appendix. They seek millions of dollars in damages but apparently feel they have no obligation to provide a detailed factual basis for this claim. The enormity of this failure warrants the strongest sanction. Accordingly, I recommend that Defendants' Counterclaim be dismissed.

#### 2. Second Motion for Contempt

The Trustee requests that as a sanction for the violation

addressed by the Second Motion for Contempt portions of Defendants Fifth and Eleventh Affirmative Defenses be stricken. Those affirmative defenses are reproduced below:

### Fifth Defense

The Defendants assert the defense that because of the Plaintiff's own actions, the Plaintiff is estopped from asserting the claims contained in the Complaint, including ... the Plaintiff's conduct in refusing to entertain third-party offers for the Property at a significantly higher amount than the purchase price paid by the Plaintiff for the Property from the Receiver ....

....

### Eleventh Defense

The Defendants assert the defense that the Plaintiff is estopped from attempting to collect any deficiency arising from the Loan Agreement with WREC because of Plaintiff's own prior acts and omissions (see Fifth Defense) ....

Answer at 7-8, 9.

I find that the requested sanction is overly broad as it would preclude Defendants from introducing evidence of "third-party offers for the Property ...," id. at 7-8, from entities or persons other than the offer(s) made by, or involving, Koffler Real Estate, LLC. The Order of 2/9/11, with which Defendants failed to comply, only required the production of documents involving or relating to Koffler. See Trustee's Mem. Re. Second Motion, Ex. A at 4. Accordingly, as a sanction, Defendants should only be precluded from introducing evidence involving or related to Koffler. Therefore, I recommend that Defendants be precluded from

introducing or referring to any evidence, documents, or communications with or from Koffler, or any affiliate thereof, regarding the purchase of 200 Frenchtown Road, North Kingstown, Rhode Island, in support of their Fifth and Eleventh Affirmative Defenses.

### 3. Attorneys' Fees

Pursuant to Fed. R. Civ. P. 37(b)(2)(C), I recommend that the Trustee be awarded the attorneys' fees it incurred in bringing the Motions as Defendants' failure to comply with the Orders of 2/4/11 and 2/9/11 was not substantially justified.

## V. Conclusion

For the reasons explained above, I recommend that the Motions be granted and that Defendants be sanctioned as stated above. Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/  David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
July 15, 2011